UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFFELINA WOLF,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BOULEVARD AUTOGROUP, LLC d/b/a<br>BARBERA'S AUTOLAND,<br><br>　　　　　Defendant. | Case No: 2:23-cv-01761<br><br>Complaint – Class Action<br><br>Jury Trial Demanded |

Raffelina Wolf ("Plaintiff"), through her attorneys Pardell, Kruzyk & Giribaldo, PLLC, alleges as follows:

**Nature of this Action**

1.　Plaintiff brings this action against Boulevard Autogroup, LLC d/b/a Barbera's Autoland ("Defendant") under the Consumer Leasing Act, 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. § 1013 *et seq.* ("Regulation M") (collectively the "CLA"), as well as Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq* (the "UTPCPL").

2.　Specifically, Plaintiff alleges that Defendant provided false lease disclosures pursuant to an automobile lease because Defendant imposed improper, unauthorized additional fees on a lease purchase option, despite the clear terms of the lease forbidding charging those fees.

3.　In fact, the National Automobile Dealers Association ("NADA") cautions dealerships against this very conduct:

> If a documentary fee will be added to the lease purchase option price in a dealer-lessee purchase transaction, these Reg M requirements can be interpreted to compel disclosure in the original lease of the amount of the documentary fee as a kind of "purchase option" fee. For a scheduled end option, the lease must state a sum certain for the lease purchase option price. If there is a purchase option fee, Reg M

1

permits a lessor to disclose it separately. And while it permits the lessor to disclose that official fees are not included in the lease purchase option price, Reg M does not give similar permission to disclose that the purchase option price does not include other fees and charges, such as a documentary fee. Taken together, this suggests that a lessor should either disclose the amount of the documentary fee as a purchase option fee or a part of the fixed lease purchase option price.

For an early termination option, a lessor must disclose the purchase option price as a sum certain or as a sum certain to be determined at a future date by reference to a readily available independent source. In most leases, the lease purchase option price is disclosed as a formula that incorporates elements of the early termination charge that are used to determine how much to add to the fixed purchase price provided for in the scheduled end option. Again, Reg M permits the lessor to contract for the early termination option price and a separate purchase option fee and to disclose that official fees are not included in the disclosed lease purchase option price. But as with the scheduled end option, it does not give similar permission to disclose that the purchase option price does not include other fees and charges, such as a documentary fee. Therefore, the choices for providing for a documentary fee as part of the lease option price in the early termination option are essentially the same as those discussed above for the scheduled end option.

If a lease does not disclose the documentary fee as a purchase option fee, charging a documentary fee in addition to the lease purchase option price risks a claim that the initial disclosure of the lease option price was not accurate and thus violated Reg M. It also risks a claim that the lease holder breached the original lease agreement by charging more than the agreed to lease option price.[1]

**Parties**

4. Plaintiff is a natural person who at all relevant times resided in Philadelphia, Pennsylvania.

5. Plaintiff leased personal property—an automobile—pursuant to a lease agreement, and therefore is a "lessee" as defined by 15 U.S.C. § 1667(2).

6. Defendant is a Pennsylvania limited liability company with its principal place of business located in Philadelphia, Pennsylvania.

7. Defendant owns and operates the Barbera's Autoland dealership which is also

---

[1] https://www.gcada.net/2022/06/21/excerpt-from-nadas-a-dealer-guide-to-federal-consumer-leasing-act-requirements/ (last visited May 5, 2023).

located in Philadelphia, Pennsylvania.

8. Defendant operates the above-referenced dealership under one or more fictitious names, including "Barbera's Autoland" and "Barbera's on the Boulevard."

## Jurisdiction

9. This Court has subject matter jurisdiction under 15 U.S.C. § 1667d(c), and 28 U.S.C. § 1331.

10. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2), as Plaintiff resides in this district and a substantial part of the transactions giving rise to this action occurred in this district.

11. In particular, Plaintiff resides in this district, Defendant is located in this district, and Defendant transacted with Plaintiff in this district.

12. On February 8, 2023, Plaintiff initiated an arbitration with the American Arbitration Association ("AAA"), but Defendant failed to pay the initiation fees required by the AAA and the Lease Agreement.

13. After multiple notices and demands from AAA over several months threatening to decline to arbitrate the matter if Defendant failed to pay the required initiation fees, on April 26, 2023, AAA formally declined to administer the matter, and further noted that it did not intend to administer future arbitrations for Defendant and accordingly instructed Defendant to remove references to AAA from its future lease agreements.

## Factual Allegations

14. On October 12, 2019, Plaintiff entered into a lease agreement with Defendant for a 2019 Jeep Compass (the "Lease Agreement"). *See generally* Exhibit A.

15. Defendant is identified as the "lessor" on the Lease Agreement. *Id.* at 1.

3

16. Plaintiff entered into the Lease Agreement at Defendant's dealership, after consulting with and transacting with Defendant's employees.

17. The Lease Agreement disclosed the following terms regarding "purchase options" for Plaintiff's lease:

> **8. PURCHASE OPTION AT THE END OF LEASE TERM**. You have an option to purchase the Vehicle at the scheduled end of the Lease Term for the Residual Value plus any past due Monthly Payments or any other amount due under this Lease, plus official fees and taxes, plus a $350 purchase option fee (the "Purchase Option Fee").
>
> **9. PURCHASE OPTION PRIOR TO THE END OF LEASE TERM**. You have an option to purchase the Vehicle prior to the end of the Lease Term for the Residual Value plus any past due Monthly payments or any other amount due under this Lease, plus official fees and taxes, plus the Base Monthly Payment multiplied by the number of Base Monthly Payments not yet due (only if this is a Monthly Payment Lease), minus unearned Rent Charges calculated according to the actuarial method, plus the Purchase Option Fee.

*Id.* at 1.

18. Defendant did not disclose any other fees that would relate or apply to the execution of a lease purchase option in the Lease Agreement.

19. Plaintiff reasonably relied on these terms, including the lease purchase option terms, when agreeing to enter into the Lease Agreement with Defendant as she expected her purchase option to be commensurate with the language in the Lease Agreement.

20. On January 13, 2023, Plaintiff executed the purchase option pursuant to the Lease Agreement, for the total amount of $23,548.32 (the "Buyer's Order"). *See* Exhibit B.

21. Upon information and belief, the amount Plaintiff had expected to pay to execute her purchase option was $15,806.20, before official fees and taxes, as per the terms of the Lease Agreement.

22. However, when Plaintiff obtained a quote from a representative of Defendant to exercise her purchase option, Defendant quoted that the purchase option would instead cost

4

$18,244.30—due to a number of added fees and increased costs, such as a "Lease Buyout Fee" of $1,495.00 and a "Messenger Fee" of $101.47. *See* Exhibit B.

23. Additionally, the "sale price" of the vehicle in the Buyer's Order was noted as $16,749.30, over $900.00 more than the appropriate purchase option price in the Lease Agreement. *Compare* Exhibit B with Exhibit A at 1.

24. Plaintiff did not know that Defendant intended to add additional fees and raise the cost of the vehicle to effectuate a lease purchase option, and that information would have been material to her decision to enter into the Lease Agreement.

25. As a result of Defendant's misrepresentations and imposition of additional unauthorized fees and increased costs on the Buyer's Order, which Defendant represented were required to consummate the purchase of her vehicle, Plaintiff incurred damages when she executed the Buyer's Order.

## Class Action Allegations

26. Plaintiff brings this action under Federal Rule of Civil Procedure 23 as a representative of the following classes[2]:

**Consumer Leasing Act Class**

> All persons within the United States who (1) entered into a vehicle lease agreement with Boulevard Autogroup, LLC that contained a purchase option at the end of the lease term; (2) leased a vehicle primarily for personal, family, or household purposes; (3) purchased, or attempted to purchase, their leased vehicle pursuant to the purchase option stated in their lease; (4) were quoted or charged by Boulevard Autogroup, LLC a price to exercise their purchase option that was in excess of the pricing disclosed in the lease agreement; and (5) received such a quote or paid such a charge at any time between one year prior to the date of the filing of this complaint through the date of class certification.

---

[2] The Consumer Leasing Act Class and the Pennsylvania Consumer Protection Act Class are collectively referred to as the "Classes."

**Pennsylvania Consumer Protection Act Class**

>All persons within Pennsylvania who (1) entered into a vehicle lease agreement with Boulevard Autogroup, LLC that contained a purchase option at the end of the lease term; (2) leased a vehicle primarily for personal, family, or household purposes; (3) purchased, or attempted to purchase, their leased vehicle pursuant to the purchase option stated in their lease; (4) were quoted or charged by Boulevard Autogroup, LLC a price to exercise their purchase option that was in excess of the pricing disclosed in the lease agreement; and (5) received such a quote or paid such a charge at any time between two years prior to of the date of the filing of this complaint through the date of class certification.

27. Excluded from the Classes are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

28. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

29. The exact number of the members of the Classes is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

30. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

31. In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendant, and by third parties.

32. Plaintiff's claims are typical of the claims of the members of the Classes .

33. As it did for all members of the Classes , Defendant (1) entered into a vehicle lease agreement with Plaintiff that contained a purchase option at the end of the lease term; and (2) charged a higher price for the purchase of the vehicle at the end of the lease than the price disclosed in the respective lease agreements.

34. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendant.

35. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

36. Plaintiff suffered the same injuries as the members of the Classes.

37. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

38. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

39. Plaintiff will vigorously pursue the claims of the members of the Classes.

40. Plaintiff has retained counsel experienced and competent in class action litigation.

41. Plaintiff's counsel will vigorously pursue this matter.

42. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

43. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual class members.

44. Issues of law and fact common to all class members are:

   a. Defendant's conduct, pattern, and practice as it pertains to charging additional fees to consumers exercising the purchase option in their lease that were not previously disclosed in their lease;

   b. Whether Defendant properly disclosed at the time of the lease the additional fees it intended to charge, and subsequently charged, consumers who sought to purchase their vehicles at lease-end;

      c.      Whether Defendant's standard lease violates the CLA and Regulation M by failing to properly disclose the purchase price of the vehicle at the end of the lease;

      d.      Defendant's violations of the UTPCPL;

      e.      Whether Defendant's conduct was willful;

      f.      Defendant's violations of the CLA and Regulation M; and

      g.      The availability of statutory penalties, actual damages, attorneys' fees, and treble or punitive damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

46. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

47. The pursuit of separate actions by individual class members would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

48. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

49. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

50. The damages suffered by the individual members of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

51. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

52. There will be no extraordinary difficulty in the management of this action as a class action.

53. Defendant acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

## Count I
### Violations of the Consumer Leasing Act
### 15 U.S.C. § 1667a
### On behalf of the Consumer Leasing Act Class

54. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-53.

55. The CLA and Regulation M require Defendant to indicate "whether or not the lessee has the option to purchase the leased property and at what price and time." 15 U.S.C. § 1667a.

56. The CLA governs the disclosures in the Lease Agreement, as well as all consumer leases issued by Defendant, because the lease terms run for greater than four months and are for less than $58,300. 15 U.S.C. § 1667(1).

57. Plaintiff and the Consumer Leasing Act Class members are natural persons who leased vehicles primarily for personal, family, and household purposes. 15 U.S.C. § 1667(1)-(2).

58. Defendant was required to comply with the CLA's disclosure requirements because it was a "lessor" as defined by 15 U.S.C § 1667(3) of the CLA, because Defendant regularly engages "in leasing, offering to lease, or arranging to lease under a consumer lease."

59. Defendant is listed as the lessor on the Lease Agreement and the lease agreements of the Consumer Leasing Act Class members.

60. Defendant has leased, offered, or arranged to lease vehicles more than five times in the preceding calendar year or more than five times in the current calendar year. 15 U.S.C. § 1667(3); Reg. M § 1013.2(h).

61. Defendant was the primary entity responsible for arranging the Lease Agreement with Plaintiff, as well as all the respective consumer leases issued by Defendant to the Consumer Leasing Act Class members.

62. The Lease Agreement signed by Plaintiff, as well as all the respective consumer leases issued by Defendant to the Consumer Leasing Act Class members, are governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 1013.

63. Defendant violated 15 U.S.C. § 1667 and 12 C.F.R. § 1013.4(i) by not disclosing the "Lease Buyout Fee" of $1,495.00 or the "Messenger Fee" of $101.47 in the purchase option price of the Lease Agreement.

64. As a result, Defendant violated 12 C.F.R. § 1013.3(a) because the purchase option price in the Lease Agreement—and all other consumer leases issued by Defendant to the Consumer Leasing Act Class members—was unclear, inaccurate, and incomplete.

65. Defendant also violated 15 U.S.C. § 1667 and 12 C.F.R. § 1013.4(i) because it failed to disclose the purchase option price in the Lease Agreement, and all other consumer leases issued by Defendant to the Consumer Leasing Act Class members, as a sum certain, or as a sum

10

certain to be determined at a future date by reference to a readily available independent source, because it included subjectively determined fees that were not objectively ascertainable by Plaintiff or the Consumer Leasing Act Class members at the time that they entered into the Lease Agreement and their respective consumer leases with Defendant.

66. These omissions were material to Plaintiff's and the Consumer Leasing Act Class members' decisions to enter into their respective lease agreements, and Plaintiff and the Consumer Leasing Act Class members detrimentally relied on these material omissions.

67. If Defendant provided an accurate, complete, and clear purchase option price in the Lease Agreement as required by the CLA, Plaintiff would have negotiated different terms or declined to lease her vehicle.

68. Pursuant to 15 U.S.C. § 1640, Plaintiff and the Consumer Leasing Act Class members seek damages from Defendant for violations of the CLA, and reasonable attorney's fees and costs.

**Count II**
**Violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201-1, *et. Seq***
**On behalf of the Pennsylvania Consumer Protection Act Class**

69. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-53.

70. Plaintiff and the members of the Pennsylvania Consumer Protection Act Class are "persons" under 73 P.S. § 201-2(2).

71. Defendant is a "person" under 73 P.S. § 201-2(2).

72. The leasing and purchase of motor vehicles constitute "trade" or "commerce" under 73 P.S. § 201-2(3) as they involve the "advertising, offering for sale, sale or distribution of any services and any property."

73. As is the case for all Pennsylvania Consumer Protection Act Class members, the Lease Agreement prepared by Defendant and executed by Plaintiff was the result of Defendant's "advertising, offering for sale, sale or distribution of any services and any property," as the subject vehicle leased to Plaintiff is tangible personal property.

74. As is the case for all Pennsylvania Consumer Protection Act Class members, the Buyer's Order prepared by Defendant and executed by Plaintiff was the result of Defendant's "advertising, offering for sale, sale or distribution of any services and any property," as the subject vehicle purchased by Plaintiff is tangible personal property.

75. Defendant was the primary entity responsible for arranging both the Lease Agreement and the Buyer's Order with Plaintiff and the buyer's orders for the Pennsylvania Consumer Protection Act Class members.

76. Defendant's actions as set forth in this complaint occurred in the conduct of trade or commerce.

77. The UTPCPL defines the following acts as "unfair or deceptive acts or practices":

   a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have";

   b) "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions";

   c) "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made"; and

d) "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

73 P.S. §§ 201-2(4), 201-3(a).

78. As was the case for all Pennsylvania Consumer Protection Act Class members, to convince Plaintiff to enter into the Lease Agreement, Defendant made numerous disclosures of Plaintiff's vehicle purchase option(s), including specific representations regarding the future price for Plaintiff to purchase her leased vehicle to be at a rate reduced from the present value of the vehicle.

79. Among these representations were Defendant's disclosures about the specific fees Plaintiff would be charged for the purchase of her leased vehicle, as well as the price for the purchase of that leased vehicle.

80. Defendant did not, however, disclose that it would charge a $900 premium on the price of Plaintiff's vehicle, or that it would charge a "Lease Buyout Fee" of $1,495.00 and a "Messenger Fee" of $101.47.

81. These omissions and misrepresentations were material to Plaintiff's decision to enter into the Lease Agreement, and Plaintiff detrimentally relied on these material omissions.

82. Upon information and belief, at the time the Lease Agreement was entered, Defendant knew it would charge additional fees or increased costs if and when Plaintiff and the Pennsylvania Consumer Protection Act Class members exercised their future purchase options.

83. Defendant intentionally and knowingly failed to disclose that it intended to impose additional fees on consumer lease purchase transactions, with the intent to mislead consumers.

84. As was the case for all of the Pennsylvania Consumer Protection Act Class members, when Plaintiff executed the vehicle purchase option under the Lease Agreement,

13

Defendant imposed additional fees and increased costs not outlined in the Lease Agreement on Plaintiff, increasing the price to be higher than that previously promised under the Lease Agreement.

85. The disclosures in the Lease Agreement contained misstatements and omissions of fact, as evidenced by the Buyer's Order containing additional fees and increased costs not outlined in the Lease Agreement.

86. Defendant further deceived Plaintiff (and the Pennsylvania Consumer Protection Act Class members) by representing that these additional fees and increased costs were required or legitimate items in the Buyer's Order and refusing to remove those charges prior to consummating the Buyer's Order

87. Plaintiff (and the Pennsylvania Consumer Protection Act Class members) were harmed by paying these additional fees and increased costs in executing their respective buyer's orders.

88. Defendant's actions with respect to both Plaintiff's and the Pennsylvania Consumer Protection Act Class's respective lease agreements and buyer's orders constitute "unfair or deceptive acts or practices" as defined in 73 P.S. § 201-2(4).

89. Defendant violated 73 P.S. § 201-3(a) by conducting "unfair or deceptive acts or practices in the conduct of any trade or commerce" through its dealings with Plaintiff and the Pennsylvania Consumer Protection Act Class members.

90. Defendant knew, or should have known, that its conduct violated the UTPCPL.

91. Furthermore, in executing their respective buyer's orders, Plaintiff and the Pennsylvania Consumer Protection Act Class members relied upon Defendant's reputation and representations that all fees charged were disclosed in their respective lease agreements.

92. Defendant knew, or should have known, that its conduct violated the UTPCPL.

93. These omissions and misrepresentations were material to Plaintiff's and the Pennsylvania Consumer Protection Act Class members' decisions to enter into both their respective lease agreements, and Plaintiff and the Pennsylvania Consumer Protection Act Class members detrimentally relied on these material omissions.

94. If Defendant provided an accurate, complete, and clear purchase option price in their respective lease agreements, Plaintiff and the Pennsylvania Consumer Protection Act Class members would have negotiated better terms or declined to exercise the purchase options of their respective vehicles.

95. Defendant's actions present a continuing risk to the general public, and affect the public interest.

96. Pursuant to 73 P.S. § 201-9.2(a), Plaintiff seeks, for herself and the Pennsylvania Consumer Protection Act Class members, "actual damages or one hundred dollars ($100), whichever is greater."

97. Pursuant to 73 P.S. § 201-9.2(a), Plaintiff seeks, for herself and the Pennsylvania Consumer Protection Act Class members, an award of punitive or treble damages.

98. Pursuant to 73 P.S. § 201-9.2(a), Plaintiff seeks, for herself and the Pennsylvania Consumer Protection Act Class members, an award of her costs and reasonable attorney's fees.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a.    Determining that this action is a proper class action;

    b.    Designating Plaintiff as a class representative of the Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Awarding Plaintiff and the Consumer Leasing Act Class damages pursuant to 15 U.S.C. § 1640;

e. Awarding Plaintiff and the Consumer Leasing Act Class reasonable attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1640;

f. Awarding Plaintiff and the Pennsylvania Consumer Protection Act Class damages pursuant to 73 P.S. § 201-9.2(a);

g. Awarding Plaintiff and the Pennsylvania Consumer Protection Act Class treble damages pursuant to 73 P.S. § 201-9.2(a);

h. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1640 and 73 P.S. § 201-9.2(a);

i. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

Date: May 8, 2023

*/s/ Gary F. Lynch*
Gary F. Lynch (PA 56887)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tele.: (412) 322-9243
gary@lcllp.com

Bryan A. Giribaldo* (to seek admission *pro hac vice*)
Alex D. Kruzyk* (to seek admission *pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701

Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

*Counsel for Plaintiff*